Good morning. Christopher Stender for the petitioner. I would like to reserve two minutes of my time for rebuttal at the end. It's our position that the withdrawal of the petitioner's asylum application was not considered and intelligent. The Fifth Amendment guaranteed to a full and fair hearing, including the right to present evidence and inspect and rebut government evidence applies in immigration proceedings. Where the proceedings were so fundamentally unfair that the alien was presented – prevented from reasonably presenting his case, the Court can find a due process violation. Was the due process claim raised in the – before the BIA? Yes, I believe it was. Was the – my understanding is that there was a – there's a substantial issue here about whether that claim has been exhausted. Maybe you can clarify that, then. It was raised – you're saying it was raised before the BIA, no dispute about that? I would actually have to re-review it, but I would point out that at the immigration judge level, the counsel was quite clear in arguing that she was prevented from being fully prepared in the presentation of the asylum application because the immigration officer – the asylum officer's notes were not given to her. Right. But you would agree that if it was not briefed to the BIA, then we do – we – we're not – it's not up to us to hear this case, then, if it wasn't briefed to the BIA. Yes. So that – that we have to look at. Yes. Okay. I would agree with that. That – that is a fair point of view. Okay. Well, where would we look? Do you think it was raised? I believe – my understanding is that the brief to the BIA actually indicates that it was a voluntary – a strategic voluntary decision to have the – to withdraw it. I did review the brief to the BIA. I did fully – in preparation for today's oral argument, I did concentrate on the briefs that were filed before the Ninth Circuit, and I did look at the government counsel's brief. Well, the first argument is that it wasn't exhausted. So what – do you have a response to that? If I could look at that and then save that for the rebuttal part. Okay. I have two minutes left at the end for that. I'll take another look at that issue. Thank you. Nonetheless, the due process claim that – in order to set forth a due process claim, the Petitioner must show prejudice. To demonstrate prejudice, the Petitioner must demonstrate only that the immigration judge's conduct potentially affected the outcome of the proceedings. The Petitioner would point out that the immigration judge clearly pressured the Petitioner to withdraw their asylum applications. As I've already stated, counsel at the immigration hearing was not permitted to inspect the asylum officer's notes prior to her decision, which was under pressure or duress to withdraw the asylum applications. The immigration judge stated somewhat in our position incredulously that the Petitioner counsel already knew what the asylum officer would say. The waiver or the withdrawal of the asylum was not considered unintelligent, and the proceedings must be remanded for consideration of Mr. Singh's asylum case, along with his withholding and his CAT claims. Now, the CAT claims, I think you're arguing, if I'm not – if I'm not – if I have this correctly, is that you're actually arguing that the CAT claim wasn't withdrawn. Are you arguing that, that somehow the CAT claim remained or that it was withdrawn and was also involuntary? Is that – is that your idea? The Torture Convention came into effect on November 20th, 1994, and was binding on the immigration court. The immigration judge in her order does not mention the CAT claim, neither orally or in the written order. The application, the Form I-589, is three applications in one. It's asylum, it's withholding, and it's Convention against Torture Relief. The Convention against Torture Relief is completely independent from the asylum and the withholding, and, in fact – Is it specified as a – as a particularized claim in that form, that – or is it all just sort of asylum, and then that includes asylum, withholding, and deportation and CAT, with – as a – as a sort of a general understanding in terms of how the claim is made? Well, certainly the legal standard differs, and I'll get into that in my argument. However, when the facts are presented to the immigration court, the immigration judge has a duty to conduct an analysis under the relevant case law of, in this case, Convention against Torture, to analyze whether the facts presented to the court would make out a claim under the Convention against Torture. The immigration judge's order here, it's on page 707 of the Certified Administrative Record, is completely silent as to the CAT relief. The only relevant statement that is made on that application by the immigration judge in her own handwriting is under other, and it's written purportedly by the immigration judge Stockton, no other relief available. Okay. So here's my question, then. Was the CAT claim withdrawn at the same time, or purported to be withdrawn, subject to the dispute that you raised on due process, with the withdrawal of the asylum claim, or was – did the CAT claim stay in existence, and was it not withdrawn? What is your position on that? Well, I suppose there's two ways we could look at it. The bottom line is it was never mentioned by the immigration judge. It's not mentioned by Petitioner's counsel at the hearing, nor by the government. There was silence to it. Right. It was subject to a motion for reconsideration and was pointed out to the BIA, and the BIA dismissed it, and it was never considered. Well, if I read this, the BIA's order, it says that the position taken before the BIA was that your clients conceded that they withdrew the asylum applications, but they say that they never intended to withdraw the torture applications. And then the BIA says that they never – that they never said that they didn't intend to withdraw the torture application. Is that correct? Correct. Silence is not a sufficient withdrawal of the claim. And in fact, more than that, the immigration judge has an affirmative duty to consider all forms of relief. By failing to mention it, even if Petitioner's counsel – or at that point Respondent's counsel didn't mention it, the immigration judge still was under that affirmative duty, which is regulatory, to consider all forms of relief. The application was filed and submitted to the Court. Withdrawal of asylum withholding has nothing to do with the withdrawal of the CAT claim. It's completely – Well, except the only problem I have with that is that apparently, according to the BIA, there was a – they were in removal proceedings for two months after they purportedly withdrew their asylum applications and never indicated to the immigration judge that they were still pressing the CAT claim. And then they didn't raise the issue on appeal. Yes. They only raised it on the motion for reconsideration. So, I mean, this – it looks to me like this is a situation where, you know, somebody thought better in hindsight, maybe we should have pressed the CAT claim. But for a while there, it doesn't seem as though it was being pressed. Well, there was a continuance of the – what is called the individual or regular hearing. The application for asylum and withholding was withdrawn at the initial hearing. Nonetheless, it still had to be considered by the Immigration Court whether or not it was mentioned by Petitioner's counsel. And, in fact, the raising of the issue in the motion to reconsider certainly put the BIA on notice that this claim was not considered by the Immigration Court, and therefore, as requested, the case should have been remanded for the immigration judge's independent consideration of the CAT issues. Okay. Well, if evidence was ever to be presented on the CAT claim, when was it to be presented? On the very occasion when the party was before the IJ and said, I withdraw these claims, and I presume left. Now, if there was to be any evidence, when was it to be presented? Wasn't that the time for hearing? Yes. And what did the Petitioner do? Yes. Without offering any evidence, right? It should have been. But that also ties into our original argument that the withdrawal was under duress and was not considered unintelligent. It's – it does – Well, that goes to all claims. But as to this one, if – as to this one, if it was not withdrawn, if you're right that it was not withdrawn, that was the occasion when the evidence should have been presented, and instead, the Petitioner and her attorney or his attorney leaves. Right? They stood silent and did not state it. I would agree, and that's factually what happened. Well, we'll give you – you've just about used your time. If you want 30 seconds to tell us where you raised the due process issue, we'll give it to you. Thank you. We'll have to hear from the government briefly. May it please the Court, I'm Lindsay Williams, and I represent the Respondent in this matter. Today, we respectfully request that the Court affirm the decisions of the Board of Immigration Appeals. Today, Your Honors, Petitioners have come to the Court with several claims that are simply disingenuous. First of all, with respect to their due process claim, they did not raise it before the Board. So therefore, it has not been exhausted, and this Court does not have jurisdiction to consider it. Their due process claim covers their claim that the immigration judge pressured them to withdraw their asylum application, as well as the fact that they were not given the opportunity to examine the notes before they withdrew their asylum application. If we are to assume that this Court has jurisdiction, even in that context, the Petitioners have not set forth a meritorious due process claim. First of all, the Petitioners were not entitled to discover the asylum officer's interview notes in preparation of his asylum claim, and they had a fair chance to review them in the context of the fraud claim. With respect to the asylum claim, Federal rules of civil procedure don't apply in removal proceedings. Second, the – with respect to the asylum claim, the plaintiff had the burden of proof. Therefore, the asylum officer's notes would only have been offered as rebuttal evidence. If the Petitioner had gotten up and had testified with respect to the contents of his asylum application, only then would the asylum officer's notes or testimony have been proffered to rebut or impeach the Petitioner. Your position is that they weren't entitled to discovery unless the notes were accompanying the officer's testimony. Well, just simply in the context of asylum, the only reason that the notes would have been proffered would have been for the impeachment purposes. So they wouldn't have had a right to that. Right. It would just be like in a criminal case, 3500 material that you'd hand over when a witness testifies. Right. And then in the context of the fraud case, when the government went to prove the fraud claim, they did call the officer to the stand. And when they called the officer to the stand, they submitted the memo that he prepared, his assessment to refer the Petitioner to the immigration judge, and his notes that were all part of the file. Those were submitted and marked as Exhibit 3 and were given to Petitioner's counsel at that point. She was given, she did request and was given a break to review the notes and to prepare her cross-examination before she cross-examined the asylum officer. And then on top of that, Singh, who is the male Petitioner, didn't testify for, until two months after those notes were submitted into evidence. So he certainly had plenty of time to review those, to refresh his recollection, to rebut what was in the notes. Moving on to the claim that the immigration judge insisted that the plaintiffs that the Petitioners withdraw their asylum applications, I can just give to you right now an administrative record, page 103, 104, 106, 110, 111, 113, 114, 115. On every single one of those pages, Petitioner's counsel indicates that she had always intended to withdraw the asylum applications. Moving beyond that, even if that weren't the case, the immigration judge reasonably determined that the 94 and 95 asylum applications needed to be dealt with prior to the 2002 adjustment of status application, which the Petitioners didn't even have an approved visa petition for yet, so they really didn't even have a claim. And then finally, with respect to Petitioner's argument that the immigration judge somehow pressured them by saying that a frivolous filing warning was going to be given if they proceeded with their asylum applications, the fraudulent nature of the asylum applications had already been discussed, and per 8 CFR 1203.20, the applicants have to be put on notice prior to there being a frivolous asylum-filing determination made. So the immigration judge was simply following the regulations. Finally, turning to the Board's denial of the motion to reconsider, there again, the Petitioner did not indicate to the immigration judge at the time that they withdrew the asylum application or in the two months afterwards that the removal proceedings continued. At no point did they indicate that they were still going to pursue their CAT claim. They didn't present any evidence. When they appealed to the Board, they didn't raise the issue. They didn't raise the issue until they filed the motion to reconsider. And they were asking for reconsideration of something they never asked to be considered. Exactly. And per the regulations, an asylum application is deemed to constitute an application for CAT protection. So when the asylum application was withdrawn, unless Petitioner's counsel specifically states, no, Your Honor, we want to pursue the CAT claim, it was withdrawn.  Thank you. You've heard the government counsel. You wish to add anything? Other than a factual recitation, I don't see that it was specifically raised.
judges: Schroeder, Leavy, Walker